FILED
U.S. DISTRICT COURT
IN THE UNITED STATES DISTRICT COURT OF MARYLAND
FOR THE DISTRICT OF MARYLAND

2019 OCT 23  PM 2: 50

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

LAWRENCE N. LEWIS,

    Plaintiff,

    v.

CHARLES THOMAS BENNER

    Defendant.

Civil Action No.: RDB-18-3156

## MEMORANDUM OPINION

Following this Court's Memorandum Opinion and Order denying the Motion to Dismiss filed on behalf of Defendant Charles Thomas Benner,[1] Defendant filed a Motion for Summary Judgment. ECF 14. Correspondence was sent to Plaintiff Lawrence Lewis advising him of his right to file an opposition and of the consequences of failing to do so. ECF 15. That correspondence was returned to the Court as undeliverable on two occasions. ECF 16, 17. Upon investigation, Lewis is no longer incarcerated in the Glen Burnie facility and is now confined at Roxbury Correctional Institution in Hagerstown, Maryland.[2] Despite the affirmative obligation to do so, Lewis did not provide the Court with a notice of change in address. *See* Local Rule 102.1.b.iii (D. Md. 2018). For the reasons that follow, Defendant's Motion for Summary Judgment is granted in part as unopposed.

---

[1]    The Clerk is directed to correct the docket to reflect Benner's full name.

[2]    *See* http://dpscs.maryland.gov/services/inmate-locator.shtml. (last viewed Oct 21, 2019). The Clerk is directed to update Lewis's address for purposes of providing him with a copy of the Court's Memorandum Opinion and Order.

## Background

Lewis filed this complaint pursuant to 42 U.S.C. § 1983 in connection with a traffic stop that occurred on July 19, 2017. ECF 1 at 5. Lewis was a passenger in the car, which was stopped on Hogneck Road in Pasadena, Maryland for the driver's failure to properly use his turn indicator and failing to come to a complete stop at a stop sign. *Id.* The driver of the car, Tim Reed, another passenger, Kacey Kinghton, and Lewis were questioned by the police officer and removed from the car. *Id.*

Lewis states he was approached by Detective Benner and asked if he had anything on him. *Id.* Lewis replied he had money inside a Crown Royal bag in the waistband of his shorts which he retrieved and handed it to Benner. *Id.* Benner then began a pat-down search of Lewis's person. *Id.* Lewis maintains that Benner began "to attempt . . . to aggressively insert his fingers between the cheeks of my butt" during the pat-down search and that he was unaware of the cause for such a search. *Id.* He claims that the clothing he was wearing – basketball shorts – were such that attempting to conceal a dangerous item would have been impossible. *Id.* When Benner asked Lewis why he was "tensing up," Lewis responded he was uncomfortable with what Benner was doing, but he claims Benner ignored his statement and continued to tell him to "loosen up." *Id.*

After handcuffing Lewis, Benner escorted Lewis to the patrol car and opened the passenger side front door. *Id.* According to Lewis, Benner applied "enough pressure to bend [him] slightly at the waist, and with no warning took his free hand and pulled [his] shorts down far enough to expose [his] bare butt." *Id.* Lewis was then placed in the front passenger seat of the patrol car. *Id.*

Benner drove the patrol car while Detective Rohe rode in the back seat behind Lewis. *Id.* During the ride Lewis asked why he had been placed under arrest and Benner responded he was

being arrested for "a crack pipe." *Id.* at 6.  Lewis claims that no crack pipe was ever found in his possession during the search.  *Id.*

Lewis claims he attempted to adjust his position in the seat of the car because "the handcuffs were quite painful and were digging into [his] wrists." *Id.*  As he was doing so, Benner suddenly "reached over, grabbed [him] by the throat, and slammed [his] head into the passenger window." *Id.*  He seeks monetary damages for the "mental anguish" caused by Benner's actions. *Id.* at 3 (Statement of Relief) and 6.

In his Affidavit Benner explains that he and two other detectives were conducting surveillance of a house about which police had received numerous complaints about drugs.  ECF 14-2 at 1, ¶4.  The car Lewis was traveling in was seen leaving the house under surveillance with multiple occupants inside the car. *Id.*  Benner arrived after the car was stopped and was asked by another detective who was searching the driver to conduct a search on the other occupants. *Id.* Benner directed Lewis to get out of the car so he could be searched.  ECF 14-2 at 2, ¶5.

When searching Lewis's pockets, Benner felt a foreign object in the back of Lewis's shorts clenched between his buttocks.  ECF 14-2 at 2, ¶6.  Benner could not retrieve the object and Lewis refused to comply with directions to spread his legs or to stop clenching.  *Id.* at ¶7.  Benner "could feel a hard rock like substance protruding from his buttocks" but did not pull Lewis's shorts down or expose his buttocks. *Id.*  Benner did, however, pull the waistband of Lewis's shorts backward while looking toward the ground and waiting for the object to fall. *Id.*

After Detective King, who had initiated the traffic stop, advised Benner that he had seen what appeared to be drug paraphernalia in the car, Benner placed Lewis under arrest for possession of drug paraphernalia and walked Lewis to the patrol car.  ECF 14-2 at 2, ¶9.  Before placing Lewis in the car, Benner "shook his shorts once more to see if the secreted object had become dislodged

during the walk." *Id.* at ¶10.   Benner states nothing fell out and the object remained hidden in Lewis's shorts. *Id.* Because he was confident the object was not a weapon, Benner placed Lewis in the police car to transport him to "the Northern District Station so the object could be recovered via proper strip search." *Id.* Lewis was seated in the front passenger seat and Detective Rohe sat behind Lewis to maintain sight of him at all times during the transport to the police station. *Id.* at ¶11.

During the drive, Lewis, who was handcuffed behind his back, began moving around in the front seat excessively.   ECF 14-2 at 3, ¶12.   Benner signaled to Rohe that Lewis was attempting to retrieve the object from his shorts. *Id.* As Benner "heard Mr. Lewis remove the object from his shorts," Rohe grabbed Lewis's handcuffed wrists to prevent him from destroying the object. *Id.* at ¶13.   Benner pulled the car over and stopped, whereupon Rohe and Benner retrieved the object, which appeared to be clear bags containing crack-cocaine, from Lewis's hand. *Id.* at ¶14.   Lewis was then taken to the police station where he was subjected to a full strip search and charged with possession of a controlled dangerous substance with intent to distribute. *Id.* at ¶¶15, 16.

During a hearing on Lewis's motion to suppress evidence in the Circuit Court for Anne Arundel County, Maryland, both Benner and Lewis testified regarding the search.   ECF 14-2 at ¶17, *see also* ECF 14-3 at 56-102 (Benner's testimony), 103-19 (Lewis's testimony).   The motion to suppress was denied, the court finding that although the initial stop of the car was pretextual, the subsequent detention and search of the occupants was lawful in light of the discovery of a crack pipe in plain view when the driver exited the car.   ECF 14-3 at 122-128 (transcript of court's ruling from the bench).

On October 25, 2018, Lewis was found guilty on an agreed statement of facts of one count of possession of a controlled dangerous substance with intent to distribute.   ECF 14-4 at 1.   On

March 15, 2019, He was sentenced to 20 years with all but 15 years suspended followed by five years of supervised probation. *Id.* at 2. Lewis has appealed his conviction to the Maryland Court of Special Appeals, but no decision has been issued by that court. *See State v. Lewis*, Crim. Case C-02-CR-17-001844 (Cir. Ct. for Anne Arundel Co.) at http://casesearch.courts.state.md.us/inquiry (last viewed Oct 21, 2019).[3]

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide

---

[3] Pursuant to Fed. R. Evid. 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

Fourth Amendment –

### 1. Search and Seizure

The Fourth Amendment protects citizens from unreasonable searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 8 (1968). A reasonable suspicion of criminal activity justifies police officers executing an investigative stop. *Id.* Observation of any traffic violation, no matter how minor, gives an officer probable cause to stop the driver. *United States v. Hassan El*, 5 F.3d 726, 731 (4th Cir. 1993). A stop for a traffic violation "does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." *Id.* A routine and lawful traffic stop permits an officer to detain the motorist to request a driver's license and vehicle registration, to run a computer check, and to issue a citation. *See United States v. Brugal*, 209 F.3d 353, 358 (4th Cir.2000). To further detain the driver requires a reasonable suspicion on the part of the investigating officer that criminal activity is afoot. *Id.* In determining whether there was reasonable suspicion, the court must look at the totality of the circumstances. *See United States v. Sokolow*, 490 U.S. 1, 8 (1989). Additionally, officers are permitted to draw on their experience and specialized training to make inferences from and deductions about cumulative evidence. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). Thus, a person's behavior, though appearing innocent, may raise questions justifying a detention

when viewed in the totality and combined with the police officer's knowledge and experience. *See Illinois v. Wardlow*, 528 U.S. 119, 125-26 (2000).

Defendant Benner asserts that Lewis's complaint for civil damages in connection with a claim of a Fourth Amendment violation is barred under the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994) because Lewis's criminal conviction emanating from that search has not been reversed or otherwise overturned. ECF 14-1 at 6. In *Heck* the Supreme Court ruled:

> We hold that, in order to recover damages for alleged unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. . . . But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486-7.

Lewis's claims that Benner violated his constitutional rights when he engaged in the traffic stop and physically searched Lewis, directly on the validity of his criminal conviction. These claims concern issues fully addressed by the state court during the suppression hearing. In pertinent part the judge observed that:

> I accept the officer's testimony that he did not inspect, visually inspect, the Defendant's buttocks area but he did a shaking of his shorts to assess whether or not anything was going to fall out as he put him in the car. And I think that was reasonable too. . . . . . [T]o me touching the outer part of the buttocks area, even closely touching it, is not a cavity search. . . . . So I believe for all of those reasons that Detective Benner *acted appropriately and that it was a constitutional and lawful search and seizure of his person and of the drugs that were ultimately found.*

ECF 14-3 at 126-127.

Following the denial of his motion to suppress on arguments virtually identical to the claims raised in this civil rights complaint, Lewis entered a not guilty plea on an agreed statement of facts. ECF 14-4. If Lewis were to prevail on the civil claims raised, any judgment in his favor would be in direct conflict with the state court's ruling that the search was lawful and did not violate his constitutional rights. This is precisely the type of claim that is barred by the holding in *Heck* and mandate dismissal of Lewis's claims at this time. Dismissal of civil claims barred by *Heck* is without prejudice so that the civil litigation may be filed again if the underlying criminal conviction is later overturned. Therefore, the Fourth Amendment claim regarding the search asserted shall be dismissed without prejudice.

2. Excessive force during arrest

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395-97 (1989); *see also Cty. of Los Angeles v. Mendez*, __ U.S. __, 137 S.Ct. 1539, 1546-47 (2017) ("*The* framework for analyzing excessive force claims is set out in *Graham*."). Reasonableness is assessed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Mendez*, 137 S.Ct. at 1546 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Factors to be included in making this determination include the severity of the crime at issue, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "'from the perspective of a reasonable officer on the scene' . . . 'based upon the information the officers had when the conduct occurred.'" *Mendez*, 137 S.Ct. at 1546 (first quoting *Graham*, 490 U.S. at 397; then quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). The Constitution "does not require police to gamble with their lives in the face of a serious threat of

8

harm." *Waterman v. Batton*, 393 F.3d 471, 479 (4th Cir. 2005) (quoting *Elliott v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996)). Further, "'the right to make an arrest' 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 192 (4th Cir. 2018) (quoting *Graham*, 490 U.S. at 396; *see also Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

As noted by this Court in its prior Memorandum Opinion, Lewis's excessive force claim is not barred by the holding in *Heck*. ECF 10 at 10. To the extent that Lewis levels that claim against Benner, he has failed to refute Benner's assertion under oath that it was Detective Rohe who grabbed his hands in the patrol car, not Benner. The admissible evidence submitted by Benner – both his affidavit and the transcript of his testimony at the suppression hearing – refutes Lewis's allegation that Benner slammed his head into the passenger window of the patrol car. ECF 1 at 6. The force admittedly used by Rohe passes Fourth Amendment scrutiny, as Rohe's actions were taken for the lawful purpose of preventing Lewis from disposing of evidence. Lewis's lack of any injury sustained, coupled with the purpose for the force used, was reasonable under the circumstances. The evidence does not support a finding of excessive force under the Fourth Amendment.

## Conclusion

By separate Order which follows, the Motion for Summary Judgment shall be granted as to Lewis's claim regarding excessive use of force, and the Fourth Amendment claim asserting unreasonable search against Benner is dismissed without prejudice.

*OcTober 23, 2019*
Date

*Rich D. Bennett*
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE